UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JEFFREY SCHROCK, JR.,**

      **Plaintiff,**                       **CIVIL ACTION NO. 15-13731**

      v.                               **DISTRICT JUDGE STEPHEN J. MURPHY, III**

**COMMISSIONER OF**          **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

      **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Jeffrey Schrock, Jr., seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to Social Security benefits for his physical and mental impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 12) and Defendant's Motion for Summary Judgment (docket no. 14).  The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 2.)  The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

**I.**      **RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 12) be DENIED and Defendant's Motion for Summary Judgment (docket no. 14) be GRANTED.

## II.	PROCEDURAL HISTORY

On July 13, 2012, Plaintiff filed an application for children's insurance benefits, alleging that he had been disabled since birth, or August 23, 1992.[1]  (TR 24.)  The Social Security Administration denied Plaintiff's claims on September 12, 2012, and Plaintiff requested a *de novo* hearing.  (TR 84, 88.)  On October 18, 2013, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Ramona L. Fernandez.  (TR 37-71.)  In a November 6, 2013, decision, the ALJ found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy.  (TR 31-32.)  The Appeals Council declined to review the ALJ's decision (TR 1-6), and Plaintiff commenced this action for judicial review.  The parties then filed cross motions for summary judgment, which are currently before the Court.  (Docket nos. 12, 14.)

## III.	HEARING TESTIMONY AND MEDICAL EVIDENCE

The ALJ (TR 26-31) and Defendant (docket no. 14 at 4-5, 8-12) each set out detailed, factual recitations with regard to Plaintiff's medical record and the hearing testimony.  Plaintiff also describes his medical record.  (Docket no. 12 at 4-6.)  Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record.  Therefore, the undersigned incorporates the factual recitations by reference.  Additionally, the undersigned will include comments and citations to the record as necessary throughout this Report and Recommendation.

## IV.	ADMINISTRATIVE LAW JUDGE'S DETERMINATION

---

[1] The Social Security Act provides benefits for the child of a person receiving old-age or disability benefits, even if the child is older than 18 when he or she applies for benefits, so long as the child has a disability that began before the child turned 22 years old, and the child and meets other qualifications.  *See* 42 U.S.C. § 402(d)(1)(B); 20 C.F.R. § 404.350(a).

The ALJ found that although Plaintiff had worked at various points in his life, he had never engaged in substantial gainful activity, and that he suffered from the following severe impairments: diabetes mellitus, asthma, attention deficit hyperactivity disorder (ADHD) and major depressive disorder. (TR 26.) The ALJ found, however, that Plaintiff's impairments, either individually or when combined, did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 26-28.) The ALJ then found that Plaintiff had the following Residual Functional Capacity (RFC):

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except [he] can no more than occasionally climb, stoop, kneel, crouch, crawl or balance; no more than occasionally use ladders, ropes or scaffolds; must avoid walking on uneven ground; must avoid concentrated exposure to extreme cold, fumes or other respiratory irritants; must avoid hazards including moving machinery or work at unprotected heights; is limited to unskilled work with only one to two step instruction and routine changes; can have no more than occasional contact with co-workers, and cannot have contact with the general public.

(TR 28.) In so finding, the ALJ also determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible." (TR 29.)

The ALJ questioned a qualified Vocational Expert (VE) regarding whether there would be any jobs available for a person with Plaintiff's RFC. (TR 66-69.) The VE testified that there would be, and gave examples of an assembler, inspector, or a packager. (*Id.*) Subsequently, in reliance on the testimony of the VE, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 31-32.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from August 23, 1992, through the date of the decision. (TR 32.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the Court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.     Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

4

> (1) Plaintiff was not presently engaged in substantial gainful employment; and
>
> (2) Plaintiff suffered from a severe impairment; and
>
> (3) the impairment met or was medically equal to a "listed impairment;" or
>
> (4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

**C.  Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the

5

decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff moves for a sentence four remand solely on the basis that the ALJ's adverse credibility determination is not supported by substantial evidence. (Docket no. 12 at 4.) Specifically, Plaintiff asserts that the ALJ's credibility determination was based on nothing more than Plaintiff's failure to comply with his prescribed diabetes treatment and the fact that Plaintiff received only "limited" treatment for his ADHD and depression. Plaintiff contends that the ALJ erred by failing to consider the effects of Plaintiff's ADHD and depression on Plaintiff's ability to comply with his prescribed diabetes treatment, and furthermore that Plaintiff should be given a chance to more fully explain "why there was a lack of treatment." (*Id.* at 6.) Defendant disputes Plaintiff's characterization, arguing that "not only was the ALJ's evaluation of Plaintiff's treatment well supported in the record, the ALJ gave several other reasons for finding that Plaintiff's allegations were not entirely credible." (Docket no. 14 at 7.)

*1. The ALJ's Assessment of Plaintiff's Credibility*

An ALJ's credibility determination is to be afforded great weight. *Jones v. Comm'r*, 336 F.3d 469, 476 (6th Cir. 2003) (citation omitted) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying."). A finding that a claimant is not credible, or is only partially credible, however, must be supported by substantial evidence in the same manner as any other ultimate factual determination.

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the

> individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.
>
> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.

SSR 96–7p.[2] Further, to the extent that the ALJ found that Plaintiff's symptoms are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). The ALJ will consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for symptom relief, (6) any measures used to relieve the symptoms, and (7) functional limitations and restrictions due to the pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying the factors). Nevertheless, "[i]t is well established that the ALJ is not required to discuss every factor or

---

[2] SSR 96-7p was superseded by SSR 16-3p. SSR 16-3p eliminates use of the term "credibility," from regulatory policy, to "clarify that subjective symptom evaluation is not an examination of an individual's character," and to "more closely follow . . . regulatory language regarding symptom evaluation." SSR 16-3p, *available at* 2016 WL 1119029, at *1 (March 16, 2016). SSR 16-3p took effect on March 16, 2016, well over two years after ALJ Fernandez issued her decision in this matter, and therefore it does not apply here. *See Murphy v. Comm'r*, No. 1:15-cv-126, 2016 WL 2901746, at *8 n.6 (E.D. Tenn. May 18, 2016) (citations omitted) (concluding SSR 16-3p should not be retroactively applied).

conduct a factor-by-factor analysis." *Pratt v. Comm'r*, No. 1:12-cv-1084, 2014 WL 1577525, at *3 (W.D. Mich. Apr. 21, 2014) (collecting cases).

Finally, regarding noncompliance with prescribed medical treatment or the failure to seek treatment, the Commissioner has ruled that:

> [An] individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner.

SSR 96–7p. The ruling goes on to list examples of explanations for a failure to seek or comply with prescribed treatment which "may provide insight into the individual's credibility," including, "[t]he individual may be unable to afford treatment," and "[t]he individual's daily activities may be structured so as to minimize symptoms to a tolerable level." *Id.*

Here, the ALJ reviewed Plaintiff's testimony any other evidence of record and concluded that Plaintiff's allegations regarding the extent of his disabling limitations were not supported by the record.

As mentioned above, a major issue in the ALJ's credibility analysis was Plaintiff's admitted failure to comply with treatment for his Type I diabetes, for which he testified that he is required to take four insulin shots per day, monitor his blood sugar before and after eating, and follow a diabetic-friendly diet. (TR 47, 57.) The ALJ found that Plaintiff, a 21-year-old high school graduate at the time of the hearing, possesses "sufficient intelligence, concentration and memory to self-sustain the proper diabetic medication regimen," and concluded that the "fact

8

that [Plaintiff] remains non-compliant is an adverse credibility factor." (TR 30.) This statement makes clear that, contrary to Plaintiff's assertion, the ALJ *did* consider the effect of Plaintiff's ADHD and depression, but found that these conditions were not severe enough to prevent Plaintiff from being able to follow his prescribed diabetes treatment. In support of this finding, the ALJ pointed to the fact that Plaintiff's treatment for his ADHD and depression was "quite limited," observing that if Plaintiff's mental health issues were as severe he claimed, "[i]t is expected that the record would indicate greater symptomology, greater intervention and more frequent and consistent service." (*Id.*) The ALJ noted that Plaintiff did not have insurance, but found that "a number of low to no cost psychological providers exist in the area." (*Id.*)

The ALJ's findings are supported by substantial evidence in the record. Regarding treatment for his mental health issues, Plaintiff testified that he goes to Oakland Family Services ("OFS") for therapy every two weeks and that the OFS providers also prescribe him medication. (TR 50.) He testified that the medication has "helped," but that he "still get[s] angry sometimes." (*Id.*) OFS treatment records from October 2013 reflect that his providers had no "medication concerns," and that his "current level of treatment continues to be appropriate." (TR 572.) Progress notes indicate that Plaintiff was "forthcoming, engaged and motivated for treatment." (*Id.*) While Plaintiff objects to the ALJ's finding that there are "low to no cost psychological providers" in the area (docket no. 12 at 5-6), Plaintiff points to no evidence in the record which suggests otherwise, nor does he address the fact that he was, in fact, receiving "appropriate" mental health services despite his lack of insurance, in October 2013.

Without citing a single case, Plaintiff also argues that "[m]ost federal courts have overturned a disability determination that was rejected or denied because the mentally ill applicant failed to seek or comply with treatment." (*Id.* at 6.) It is true that the United States

9

Court of Appeals for the Sixth Circuit, and other courts, have cautioned ALJs "not to assume that a patient's failure to receive . . . treatment evidences a tranquil mental state," because "[f]or some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009) (citing *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009)). In this case, however, as discussed above, the record reflects that Plaintiff *was* receiving mental health treatment for his ADHD and depression, albeit relatively conservative treatment, and the record further reflects that the treatment was considered "appropriate" by Plaintiff's providers. (TR 572.) These facts support the ALJ's determination that Plaintiff's mental health issues were not severe enough to substantially interfere with Plaintiff's ability to manage his diabetes.[3] Furthermore, Plaintiff fails to point to any evidence in the record suggesting that his ADHD and depression somehow render him unable to seek more aggressive mental health treatment, or unable to comply with his diabetes treatment regimen. *See, e.g.*, *Burge v. Comm'r of Soc. Sec.*, No. 1:13-CV-87, 2013 WL 6837192, at *3 (N.D. Ohio Dec. 26, 2013) (citations omitted) (holding that, "the record must contain evidence expressly linking noncompliance with the severe mental impairment").

In addition to Plaintiff's lack of aggressive treatment for his ADHD and depression, other evidence in the record supports the ALJ's finding that Plaintiff's mental health issues are not severe enough to substantially interfere with his ability to properly manage his diabetes, or to work. For example, Dr. Thomas Tsai, the state DDS medical consultant and psychiatrist, wrote

---

[3] The undersigned notes that the ALJ stated, on page 8 of her decision, that when Plaintiff "was prescribed psychotropic medications he was non-compliant." (TR 31.) There was conflicting testimony on this point. In response to the ALJ's questions, Plaintiff indicated that he took his medication as prescribed by his doctors at OFS. (TR 50.) However, in response to his attorney's question: "Are you non-compliant in terms of taking your anti-depressants?" Plaintiff answered, "Yes." (TR 57.) Regardless, it is clear from the ALJ's decision that she relied on the conservative nature of Plaintiff's mental health treatment in evaluating Plaintiff's credibility, rather than on whether Plaintiff took his anti-depressants as prescribed. (*See* TR 30.)

that Plaintiff "is able to understand, remember, and carry out simple instructions; make judgments that are commensurate with the functions of unskilled tasks, i.e., work-related decisions; . . . and deal with most changes in a routine work setting." (TR 80.) The ALJ gave Dr. Tsai's opinion "great weight," which Plaintiff does not challenge. (TR 31.) In response to the ALJ's detailed questions, Plaintiff himself testified that he doesn't follow his diabetes treatment regimen because he "just [doesn't] like to do it," due to the fact that he is afraid of needles. (TR 47.) Plaintiff testified that his doctors recommended that his mother give him the shots, or at least be responsible for ensuring that he take the shots. (*Id.*) When the ALJ questioned Plaintiff's mother about why she did not give him the shots, Plaintiff's mother explained that she "just [didn't] want any confrontations" with Plaintiff. (TR 64.) She nevertheless testified that, going forward, she planned to "start taking control" of Plaintiff's diabetes treatment, by "administering the injections." (TR 63.) This testimony supports the ALJ's determination that Plaintiff's failure to properly manage his diabetes is not justified by his ADHD and depression.

Moreover, as the ALJ emphasized, Plaintiff's mental health issues may in fact be aggravated by his failure to properly manage his diabetes. (TR 29.) OFS records state that due to Plaintiff's failure to follow his insulin regimen, "it is difficult to determine depressive symptoms from those caused by lack of diabetes treatment." (TR 404.) Plaintiff testified that he gets dizzy, nauseous, and "really angry," when his blood sugar is very high, and his mother agreed. (TR 48, 367.)

In making her overall credibility determination, the ALJ also relied on the fact that Plaintiff has only "mild" restriction in his activities of daily living, noting that he takes out the trash, washes dishes, and enjoys reading, watching movies and drawing. (TR 29.) The ALJ

11

noted that Plaintiff graduated high school "with special education accommodation," and went on to attend community college for one year. During that time, he earned passing grades, wrote papers with help, and used a computer. (TR 28, 44-45.) The ALJ also noted that Plaintiff's "[m]ental status examination findings were generally positive." (TR 30.)

In sum, the record reflects that Plaintiff's primary medical issue is his diabetes, which is uncontrolled due to his failure to be consistent with his insulin injections, blood sugar monitoring, and diet. (TR 361, 366-67.) Contrary to Plaintiff's argument, the ALJ considered the effects of Plaintiff's ADHD and depression, but found that these conditions did not constitute "good reasons" justifying Plaintiff's failure to follow his prescribed diabetes regimen, and therefore concluded that Plaintiff's statements concerning the extent of his limitations were not credible.[4] *See* SSR 96–7p.

As discussed above, these findings are supported by substantial evidence in the record. Notably, despite the fact that the ALJ concluded that Plaintiff's limitations were not as severe as he alleged, the ALJ nevertheless considered "the full effect of symptoms related to diabetic non-compliance" in adopting Plaintiff's RFC. (TR 29.) The ALJ also found that due to Plaintiff's moderate difficulties with "sustaining pace" and "interacting appropriately with others," he would be limited to work "requiring minimal steps and a simple routine," "no more than occasional contact with supervisors," and "only brief and superficial contact with co-workers." (TR 28.) The ALJ further found that, although Plaintiff's asthma was essentially controlled, with "minimal complaints of shortness of breath, little evidence of any emergent care needs and good

---

[4] Plaintiff does not argue that his failure to comply with his diabetes treatment is due to his lack of insurance, nor does he take issue with the ALJ's characterization of the insulin prescription and a diabetic-friendly diet as "affordable." (TR 29-30.) It is nevertheless worth noting that Plaintiff's mother testified Plaintiff could see his family doctor for insulin and pay cash. (TR 66.)

spirometry," Plaintiff's work environment should be free of "fumes or other respiratory irritants," so that "the impairment is not aggravated." (TR 28-29.)

The ALJ's assessment of Plaintiff's credibility is supported by substantial evidence and should not be disturbed; Plaintiff's Motion should be denied in this regard. Plaintiff does not allege any error with any other part of the ALJ's decision, and the undersigned finds it is supported by substantial evidence, as discussed throughout this Report and Recommendation.

## VI.     CONCLUSION

For these reasons, the Court should DENY Plaintiff's Motion for Summary Judgment (docket no. 12) and GRANT Defendant's Motion for Summary Judgment (docket no. 14).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length

unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated:   January 4, 2017			s/ Mona K. Majzoub
						MONA K. MAJZOUB
						UNITED STATES MAGISTRATE JUDGE


### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated:  January 4, 2017			s/ Lisa C. Bartlett
						Case Manager